# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 11, 2017 Session

## STATE OF TENNESSEE v. KEVIN PATTERSON AKA JOHN O'KEEFE VARNER AKA JOHN O'KEEFE KITCHEN

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Coffee County**
**No. 41631F   Walter C. Kurtz, Sp. Judge, sitting by designation**

_____

### No. M2015-02375-SC-R11-CD

_____

We granted this appeal to determine whether deficiencies in the State's timely filed notice of intent to sentence the defendant to life imprisonment without the possibility of parole as a repeat violent offender entitle the defendant to relief via the plain error doctrine. We conclude that, although imperfect, the timely filed notice fairly informed the defendant of the State's intent to seek enhanced sentencing and triggered the defendant's duty to inquire into the errors and omissions. Furthermore, the defendant has failed to establish that the deficiencies in the notice adversely affected his substantial rights—a necessary criterion for obtaining relief via the plain error doctrine. Accordingly, we reverse in part the Court of Criminal Appeals' judgment, insofar as it set aside the defendant's sentence of life without parole and remanded to the trial court for resentencing, and we reinstate the judgment of the trial court in all respects.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed in Part; Judgment of the Trial Court Reinstated

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Brent C. Cherry, Senior Counsel; and Craig Northcott, District Attorney General, for the appellant, State of Tennessee.

John E. Nicoll, District Public Defender (on appeal); and Daniel Marshall, Nashville, Tennessee (at trial), for the appellee, Kevin Patterson aka John O'Keefe Varner aka John O'Keefe Kitchen.

# OPINION

The only issue in this appeal is the sufficiency of the notice the State provided to the defendant, John O'Keefe Varner,[1] of its intent to sentence him as a repeat violent offender to life imprisonment without the possibility of parole under the three strikes law. Tenn. Code Ann. § 40-35-120(i)(2) (2014 & 2017 Supp.). Therefore, we forgo a detailed recitation of the proof offered at trial to support the defendant's convictions of attempted second-degree murder, aggravated assault, and being a felon in possession of a firearm and recite the following summation for context.

The victims, Brandi Frazier and Scott Wilfong, visited their friend Donald Brewer in early February 2013. Mr. Brewer lived near the defendant, and the defendant's girlfriend drove Ms. Frazier to a liquor store in the defendant's truck. When they returned, the defendant pulled his girlfriend from the vehicle by her hair and struck her. Ms. Frazier got out of the truck, shouting and cursing at the defendant. Ms. Frazier and Mr. Wilfong had never met the defendant before that day. The defendant approached Ms. Frazier in an aggressive manner with his arm raised, and she hit him twice on the side of his head with a bottle of rum to stop his advance. Mr. Wilfong then intervened, and he and the defendant exchanged angry words, but the altercation ended when Mr. Wilfong and Ms. Frazier returned to their friend's nearby home. The entire incident lasted only five or ten minutes, and Mr. Wilfong gave it little thought afterwards, believing everything had calmed.

Mr. Wilfong's belief proved incorrect. On February 9, 2013, Mr. Wilfong and Ms. Frazier visited the home of J.D. Martin and Heather Gilbert to talk about ways to raise bail money for their mutual friend, Mr. Brewer, who had been arrested and jailed. During their visit, Mr. Brewer's estranged wife, Natalie Brewer, and the defendant arrived uninvited at the home. Ms. Brewer, a longtime friend of Ms. Gilbert, entered the home without invitation, approached Ms. Frazier, who had called Ms. Brewer a snitch earlier in the day, and began swearing and behaving aggressively.

According to Mr. Wilfong's testimony, the defendant remained outside but knocked on the door and told Mr. Wilfong they had "unfinished business." Interpreting the comment as a reference to the earlier argument, Mr. Wilfong went outside "prepared to fight," believing from the defendant's tone that they "were probably about to be in a

---

[1] The Coffee County Grand Jury returned an indictment in March 2013 that listed the defendant's name as John O'Keefe Varner. A superseding indictment filed in April 2015 referred to the defendant as "Kevin Patterson AKA John O'Keefe Varner AKA John O'Keefe Kitchen." The "Notice of Prior Convictions" the State filed January 1, 2015, referred to the defendant as "John O'Keefe Varner." Throughout the trial, the defendant was referred to as "John O'Keefe Varner," and that is how his name is listed on the record on appeal. Thus, for purposes of clarity and consistency, we also identify the defendant as John O'Keefe Varner.

confrontation." Once outside, Mr. Wilfong, who was unarmed, saw that the defendant had a handgun. Inexplicably, Mr. Wilfong declared that he "wasn't scared of the gun" and "motioned toward [the defendant] as if to hit him." The defendant "leaned back and shot at the same time." The bullet struck Mr. Wilfong in the right hip. Both men "froze for a split second," but when the defendant raised and aimed the gun a second time, Mr. Wilfong ran into the nearby woods.

Hearing the gunshot, Ms. Frazier ran outside and saw the defendant standing and pointing the gun toward the woods. When the defendant turned the gun on her, Ms. Frazier retreated toward Ms. Gilbert's vehicle, which was parked nearby. The defendant lowered his weapon and ran past Ms. Frazier, striking her in the face as he passed with enough force to knock her over the hood of Ms. Gilbert's car. The defendant kept running, got into his truck, where Ms. Brewer was already waiting, and drove away from the scene.

The victims called 911 not long after the incident, but the police were unable to locate the scene that evening and did not investigate until the next day. In March 2013, the Coffee County Grand Jury indicted the defendant with attempted first-degree murder of Mr. Wilfong and aggravated assault of Ms. Frazier. However, the defendant fled to Las Vegas, Nevada, after the incident, and he was not apprehended until a year and a half later.

After his apprehension, on January 1, 2015, the State filed a document titled "Notice of Prior Convictions," which stated:

> The State of Tennessee by and through the Office of the District Attorney General, Fourteenth Judicial District, pursuant to [R]ule 609(a)(3) of the Tennessee Rules of Evidence and T.C.A. § 40-35-202(a) to give the defendant notice of the following convictions that the State will seek to introduce to impeach the defendant's testimony, and/or to enhance the defendant's punishment. The State of Tennessee also hereby gives notice to the defendant of its intent to seek to have him declared as a Repeat Violent Offender pursuant to T.C.A. § 40-35-120:

| Date | Conviction | County, State |
|---|---|---|
| 12/28/1985 | THEFT | CALIFORNIA |
| 02/10/1987 | POSS OF FIREARM | CALIFORNIA |
| 03/20/1987 | CONSPIRACY | CALIFORNIA |
| 07/04/1990 | AGG ASSAULT | SHELBY CO., TN |
| 01/24/1992 | FAC 2ND DEGREE MURDER | SHELBY CO., TN |
| 08/26/1993 | POSSESSION OF WEAPON | SHELBY CO., TN |
| 05/03/1994 | 2ND DEGREE MURDER | SHELBY CO., TN |

In April 2015, a superseding indictment was issued charging the defendant with attempted first-degree murder of Mr. Wilfong, aggravated assault of Ms. Frazier, and being a felon in possession of a firearm. The defendant's trial occurred July 14-16, 2015. At the beginning of the trial, the parties entered a written stipulation that the defendant had been convicted in Haywood County prior to February 2013 of a felony involving the use of force, violence, and a deadly weapon, and that the conviction prohibited the defendant from possessing a firearm. The State relied upon this stipulation to prove the charge that the defendant was a felon in possession of a firearm. The defendant was convicted of attempted second-degree murder, aggravated assault, and being a felon in possession of a firearm.

At a separate sentencing hearing on September 23, 2015, the prosecution entered as exhibits certified copies of judgments reflecting the defendant's April 20, 1994 conviction of second-degree murder in Haywood County and his January 14, 1992 conviction of facilitation of second-degree murder in Shelby County. The trial court stated its understanding that the defense "had no objection to the accuracy of the [defendant's] prior criminal record" as set out in the pre-sentence report. Defense counsel responded: "That is correct, Your Honor." However, defense counsel argued that the defendant should not be sentenced as a repeat violent felony offender because his prior convictions preceded the July 1, 1994, effective date of the repeat violent felony offender law. The trial court rejected this argument but noted that mandatory sentencing laws have been criticized as unwise public policy and commented that the criticism may be well-taken. Nevertheless, the trial court ruled that the "so-called three strikes" or repeat violent felony offender law is "on the books" and is not limited to offenses committed after its July 1, 1994 effective date. As for the defendant, the trial court pointed out that he unquestionably had prior and separate convictions of facilitation to commit second-degree murder and second-degree murder. As a result, the trial court ruled it had "no choice" under the repeat violent offender statute but to sentence the defendant to imprisonment for life without the possibility of parole on his conviction of attempted second-degree murder of Mr. Wilfong. The trial court imposed a five-year sentence on each of the defendant's other convictions and ordered these sentences served concurrently with the sentence of life without the possibility of parole.

The defendant appealed, alleging four trial errors but not challenging his sentences. State v. Patterson, No. M2015-02375-CCA-R3-CD, 2016 WL 7131253, at *1 (Tenn. Crim. App. Dec. 7, 2016), perm. app. granted (Tenn. Apr. 12, 2017). The Court of Criminal Appeals unanimously rejected the alleged trial errors and affirmed the defendant's convictions. Id. Nevertheless, two judges of the Court of Criminal Appeals sua sponte concluded that the State's notice of its intent to sentence the defendant as a repeat violent offender under Tennessee Code Annotated section 40-35-120(i)(2) failed to describe sufficiently the nature of the defendant's prior qualifying convictions and failed to list the dates of the separate periods of incarceration on the convictions as required by

the statute. Patterson, 2016 WL 7131253, at *9. Because of these deficiencies, the majority of the Court of Criminal Appeals Panel concluded that "the document filed by the State 'did not qualify as notice pursuant to the repeat violent offender statute.'" Id. (quoting State v. Cooper, 321 S.W.3d 501, 506 (Tenn. 2010)). As a result, the majority set aside the defendant's sentence of life imprisonment without the possibility of parole and remanded to the trial court for resentencing. Id. One judge dissented from this conclusion and would have held that the State's notice substantially complied with the repeat violent felony offender notice statute and that the defendant failed to show prejudice resulting from any noncompliance. Patterson, 2016 WL 7131253, at *11 (Easter, J., concurring in part and dissenting in part). We granted the State's application for permission to appeal.

## II. Standard of Review

The issue in this appeal is whether the Court of Criminal Appeals erred in concluding that deficiencies in the State's notice of its intent to sentence the defendant as a repeat violent offender constitute plain error requiring reversal. This is a question of law, to which de novo review applies. State v. Knowles, 470 S.W.3d 416, 423 (Tenn. 2015) ("Whether the plain error doctrine has been satisfied is a question of law which we review de novo."); Cooper, 321 S.W.3d at 506 (stating that de novo review applies to the Court of Criminal Appeals' determination of whether plain error has been established); State v. Livingston, 197 S.W.3d 710, 712 (Tenn. 2006) (applying de novo review when reviewing the sufficiency of the notice of enhanced sentencing).

A defendant bears the burden of persuading an appellate court that plain error entitles him to relief. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing United States v. Olano, 507 U.S. 725, 734 (1993)). An appellate court will grant relief under the plain error doctrine only if all of the following five criteria are satisfied: (1) the record clearly establishes what occurred in the trial court; (2) the error amounted to a breach of a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the defendant; (4) the error was not waived for tactical purposes; and (5) consideration of the error is necessary to do substantial justice. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). If a defendant fails to establish any one of these criteria, the defendant may not obtain relief via the plain error doctrine. Knowles, 470 S.W.3d at 425. Furthermore, an appellate court need not consider all five factors if the record shows that one of the factors cannot be established. Id.

- 5 -

## III.  Analysis

### *A. Notice Requirements for Enhanced Sentences*

Tennessee's criminal sentencing statutes establish three sentencing ranges—Ranges I, II, and III—and six offender classifications—especially mitigated offender, standard offender, multiple offender, persistent offender, career offender, and repeat violent offender.  Tenn. Code Ann. §§ 40-35-105 to -112 (2014 and 2017 Supp.).  The number and nature of a defendant's prior convictions determine offender classification, and offender classification determines the applicable sentencing range.  Tenn. Code Ann. §§ 40-35-106(a)-(b), -107(a)-(b), -108(a)-(b), -109(a)(1), -120(a)-(f).  Standard offenders receive Range I sentences, multiple, persistent, and career offenders receive lengthier Range II and III sentences, and repeat violent offenders are subject to sentences of life imprisonment without the possibility of parole.  Tenn. Code Ann. §§ 40-35-106(c); -107(c); -108(c); Tenn. Code Ann. § 40-35-120(g).  Thus, multiple, persistent, career, and repeat violent offenders are subject to enhanced sentences.  Cooper, 321 S.W.3d at 507.

If the State intends to seek an enhanced sentence for a defendant in any of these offender classifications, it must provide the defendant with notice of its intent to do so.  See Tenn. Code Ann. § 40-35-202(a) (2014) (addressing the notice required when the State intends to sentence a defendant as a multiple, persistent, or career offender); Tenn. Code Ann. § 40-35-120(i)(2)-(3) (describing the notice that must be provided when the State intends to sentence a defendant as a repeat violent offender).  Although this appeal involves only the statutory notice requirement for enhanced sentencing as a repeat violent offender, we begin our analysis with the statutory notice requirement for enhanced sentencing as a multiple, persistent, or career offender.  We do so because the language of these statutory notice requirements is similar.  Cooper, 321 S.W.3d at 507.  Moreover, the statutory notice requirement for multiple, persistent, and career offenders has been in effect in substantially the same form since 1982.  David Demar Ayliffe, Comment, Criminal Procedure—Tennessee v. Carter: The Strict Requirement of Notice Under Tennessee's Recidivist Sentencing Statutes, 35 U. Mem. L. Rev. 145, 160-164 (2004) (providing a detailed discussion of the history and development of the statutory notice requirements in Tennessee).  As a result, Tennessee's appellate courts "have addressed many questions involving subtleties of the statute," Livingston, 197 S.W.3d at 712, and these decisions are instructive and supply the necessary context for our consideration of the statutory notice requirement for repeat violent offenders.

## B. Multiple, Persistent, or Career Offender Notice Requirement

The statute requiring the State to give notice of its intent to seek enhanced sentencing for a defendant as a multiple, persistent, or career provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.

Tenn. Code Ann. § 40-35-202(a); see also Tenn. R. Crim. P. 12.3(a) ("If the district attorney general intends to seek an enhanced punishment as a multiple, persistent, or career offender, the district attorney general shall file notice of this intention not less than ten (10) days before trial. If the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial."). This statutory notice requirement provides defendants with fair notice of their exposure to enhanced sentencing,[2] orders plea-bargaining, enables defendants to make informed decisions before pleading guilty, aids defendants in developing trial strategy and preparing for sentencing hearings, and assists defendants "in evaluating the risks and charting a course of action before trial." State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990). With regard to the form of the notice, this Court has commented that "the practice of 'embedding' information inside an unrelated document is problematic" and has instructed that "the filing of separate documents properly captioned is to be preferred." State v. Benham, 113 S.W.3d 702, 705 (Tenn. 2003).

With regard to the content of the notice, this Court has charted a middle ground. Strict compliance has not been required with the matters enumerated in the statute, even though the statute uses "shall," but a notice that fails to provide any of the statutorily required relevant information is ineffective and cannot support imposition of an enhanced sentence. Adams, 788 S.W.2d at 559. Moreover, this Court has often emphasized that the responsibility for asserting "the appropriate sentencing status in the first instance" lies with the State and that the State "may not shift these burdens to an accused by filing what

---

[2] See Oyler v. Boles, 368 U.S. 448, 452 (1962) (stating that due process requires a state to provide a defendant with "reasonable notice and an opportunity to be heard" when the State seeks to impose an enhanced sentence based on recidivism, "even if due process does not require that notice be given prior to the trial on the substantive offense").

is essentially an empty notice." Id. But where the State substantially complies "an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." Id. ("Where an ambiguity or contradiction appears on the face of the notice, defendant has a duty to inquire further."); see also State v. Debro, 787 S.W.2d 932, 934 (Tenn. Crim. App. 1989), (holding that to obtain relief based on a content-defective notice a defendant must show prejudice). "Generally, if notice is filed late or is filed timely but is otherwise defective, the defendant must show prejudice before the notice will be rendered ineffective." State v. Carter, 121 S.W.3d 579, 585 (Tenn. 2003). "In other words, what is required is 'fair' notice, not 'perfect' notice." Livingston, 197 S.W.3d at 713 (citing Adams, 788 S.W.2d at 559; State v. Taylor, 63 S.W.3d 400, 413 (Tenn. Crim. App. 2001)). On the other hand, this Court has "strictly applied" the statutory requirement "that *some* notice meeting the minimal requirements of the statute be given." Id. Thus, in Adams, this Court declined to uphold the enhanced sentence because the purported notice the State gave prior to trial failed to meet the minimal requirements of the statute. 788 S.W.2d at 559.[3] Likewise, in a subsequent case, this Court held that the State failed to provide pretrial notice of its intent to seek enhanced sentencing by attaching a copy of the defendant's prior criminal record to its response to the defendant's discovery request. Benham, 113 S.W.3d at 705.

### C. Repeat Violent Offender Notice Requirement

Having reviewed the principles articulated by courts interpreting the statutory notice requirement for enhanced sentencing as a multiple, persistent, or career offender, we turn to the statutory notice requirement for repeat violent offenders. The statutes relating to the repeat violent offender classification were enacted in 1994. 1994 Tenn. Pub. Acts 994. A defendant qualifies for sentencing as a repeat violent offender by being convicted after July 1, 1994, of one of the violent felonies listed in the statute, Tenn. Code Ann. § 40-35-120(a)(1), and by having been previously convicted of one or more of the offenses enumerated in the statute for which the defendant served separate periods of incarceration, id. § 40-35-120(a)(2)-(6), -120(e). If a defendant has a sufficient number of prior convictions to qualify for sentencing as a repeat violent offender, a trial judge

---

[3] The notice filed in Adams was deemed ineffective because it:

> should have stated that Adams had committed an especially aggravated offense and that he was on probation from a felony conviction at the time of the offense. It should have given details of the former judgment. It contained none of this information. Not only was it wholly inadequate to advise that a Range II sentence was sought, it was positively misleading, as it dealt exclusively with matters relevant to another phase of sentencing.

788 S.W.2d at 559.

must reject any plea bargain that does not recommend sentencing the defendant as a repeat violent offender. Tenn. Code Ann. § 40-35-120(f). However, the district attorney may amend the indictment to an offense that does not qualify the defendant for sentencing as a repeat violent offender. Id. Again, the mandatory sentence for a repeat violent offender is life imprisonment without the possibility of parole. Tenn. Code Ann. § 40-35-120(g). Before imposing this sentence, the trial court must find, beyond a reasonable doubt, that the defendant meets the requirements to be declared a repeat violent offender. Id.

The statute requiring the State to give notice of its intent to seek enhanced sentencing as a repeat violent offender provides:

> (2) The district attorney general shall file a statement with the court and the defense counsel within forty-five (45) days of the arraignment pursuant to Rule 10 of the Rules of Criminal Procedure that the defendant is a repeat violent offender. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant, shall set forth the dates of the prior periods of incarceration, as well as the nature of the prior conviction offenses. If the notice is not filed within forty-five (45) days of the arraignment, the defendant shall be granted a continuance so that the defendant will have forty-five (45) days between receipt of notice and trial.

> (3) Failure to comply with this subsection (i) does not require release of a person from custody or a dismissal of charges.

Tenn. Code Ann. § 40-35-120(i)(2)-(3). This Court has considered this statutory notice requirement only once—seven years ago in Cooper—and Cooper formed the basis of the Court of Criminal Appeals' decision granting the defendant relief. In this Court, the defendant argues that the Court of Criminal Appeals properly concluded that Cooper entitles him to relief. The State responds that Cooper does not apply here. According to the State, Cooper stands only for the proposition that if the State fails to give any notice at all prior to trial, it may not seek enhanced sentencing as a repeat violent offender. We agree with the State's reading of Cooper.

In Cooper, the State filed a document prior to trial which was titled "Notice of Intention to Use Prior Bad Acts for Impeachment and Enhancement of Sentence." 321 S.W.3d at 503. The document listed "Sodomy (felony) 3 counts" in circuit court in Klamath Falls, Oregon as Mr. Cooper's prior criminal record. Id. The document did not refer at all to the State's intent to sentence Mr. Cooper as a repeat violent offender. Id. Mr. Cooper's trial occurred on June 8 and 9, 2006, and a jury convicted Mr. Cooper of aggravated rape. Id. at 503-04. About two weeks after his trial, on June 21, 2006, the

State filed another document, titled "Sentencing Position," in which the State asserted that Mr. Cooper's conviction of aggravated rape justified classifying him as a "repeat violent offender" and required imposing a sentence of imprisonment for life without the possibility of parole. Id. at 504. The State based these assertions on the "Notice" it filed prior to Mr. Cooper's trial listing his prior sodomy convictions in Oregon, claiming that this notice was sufficient to notify Mr. Cooper that the State intended to use the convictions for sentencing purposes. Id.

Mr. Cooper did not object to the timing of the State's notice, and although the trial court raised the issue sua sponte at the sentencing hearing, the trial court concluded that Mr. Cooper had failed to show prejudice by the deficiencies in the State's pretrial "Notice." Id. Thus, the trial court sentenced Mr. Cooper as a repeat violent offender to life without the possibility of parole. Id. Mr. Cooper challenged the State's notice in his amended motion for new trial but failed to raise the issue on appeal. Id. Nevertheless, the Court of Criminal Appeals sua sponte considered the notice issue but concluded that it did not amount to plain error because Mr. Cooper had failed to establish prejudice. Id. The Court of Criminal Appeals surmised that Mr. Cooper might possibly be able to establish prejudice in a post-conviction proceeding by showing that he had been unaware of the State's intent to sentence him as a repeat violent offender when he rejected the six-year offer made during plea negotiations. Id. This Court thereafter granted Mr. Cooper's application for permission to appeal, in which he asserted, among other things, that the Court of Criminal Appeals erred by failing to grant him relief via the plain error doctrine based on the notice issue. Id. at 504-05.

In resolving the notice issue in Cooper, this Court began by remarking upon the similarity of the language of the statutory notice requirement for enhanced sentencing as a repeat violent offender and that of the statutory notice requirement for enhanced sentencing as a multiple, persistent, or career offender. Cooper, 321 S.W.3d at 507. The Cooper Court next recited with approval the principles, discussed hereinabove, which Tennessee courts had articulated and applied when interpreting the statutory notice requirement for enhanced sentencing as a multiple, persistent, or career offender. Id. Next, the Cooper Court reviewed another decision involving the notice required when the State seeks the death penalty or life imprisonment without the possibility of parole for first degree murder. Id. (discussing State v. Gilliland, 22 S.W.3d 266 (Tenn. 2000)).

In Gilliland, the State filed its notice of intent to seek the death penalty prior to trial but then withdrew the notice. Gilliland, 22 S.W.3d at 275-76. The State did not file a separate notice of intent to seek life imprisonment without the possibility of parole, but after the defendant was tried and convicted of felony first-degree murder, the State announced its intention to seek that penalty. Id.; see also Cooper, 321 S.W.3d at 507 (discussing Gilliland). The Gilliland Court held that the State's withdrawal of its notice of intent to seek the death penalty also amounted to a withdrawal of its notice of intent to

seek imprisonment for life without the possibility of parole. Id. at 276. Citing the importance of intangible considerations such as plea negotiations, the Gilliland Court declared that "'the [S]tate is always required to give notice *before* trial,'" Cooper, 321 S.W.3d at 507 (quoting Gilliland, 22 S.W.3d at 276), and "declined to hold that a lack of actual prejudice excused" the State's failure to provide notice before trial. Id. (citing Gilliland, 22 S.W.3d at 276). The Gilliland Court modified the defendant's sentence to life imprisonment, citing a statute requiring imposition of a life sentence for first-degree murder if the State failed to file a notice of intent to seek the death penalty or a sentence of life imprisonment without the possibility of parole. Gilliland, 22 S.W.3d at 276 (citing Tenn. Code Ann. § 39-13-208(c)); see also Cooper, 321 S.W.3d at 507 (discussing Gilliland).

The Cooper Court recognized that the repeat violent offender statute does not mandate any particular remedy or require imposition of any particular sentence where the State fails entirely to file pretrial notice of its intent to seek enhanced sentencing as a repeat violent offender. Cooper, 321 S.W.3d at 507. Nevertheless, citing "the severity of the sentence" for repeat violent offenders, the Cooper Court concluded that adopting a similar remedy was appropriate and held "that the sentence of imprisonment for life without the possibility of parole was not authorized because the only substantially compliant notice [in Mr. Cooper's case] *was filed after trial and therefore was ineffective*." Id. at 507-08 (emphasis added). As the foregoing examination reveals, the Court in Cooper did not cite deficiencies in the content of the State's notice as a basis for setting aside the repeat violent offender sentence. Rather, it cited the State's failure to provide any *pretrial* notice of its intent to seek enhanced sentencing as a repeat violent offender. Id. at 508. As this Court had done previously when interpreting the statutory notice requirement for enhanced sentencing as a multiple, persistent, or career offender, the Cooper Court strictly applied the statute mandating that the State give "*some* notice meeting the minimal requirements" before trial. Livingston, 197 S.W.3d at 713.

Applying these principles to the facts of this case, we conclude that the holding of Cooper does not control the resolution of this appeal, although its discussion of the statutory notice requirement for repeat violent offenders certainly is instructive. Unlike Cooper, in this case the State unquestionably provided timely pretrial notice of its intent to seek enhanced sentencing as a repeat violent offender. Therefore, the question presented here in an indirect way via the plain error doctrine is whether the notice provided met the minimal requirements. Although Cooper did not require this Court to determine the sufficiency of the notice given, the Cooper Court recited with approval the principles articulated in prior cases for evaluating the sufficiency of the notice the State had provided of its intent to seek enhanced sentencing as a multiple, persistent, or career offender. 321 S.W.3d at 507. Since Cooper, the Court of Criminal Appeals has applied these same principles to evaluate the sufficiency of the notice provided for enhanced sentencing as a repeat violent offender. See, e.g., State v. Thompson, 36 S.W.3d 102,

- 11 -

115-16 (Tenn. Crim. App. 2000) (relying on prior "decisions with respect to other statutory requirements of notice in sentencing matters" and holding that the State's failure to file its notice forty-five days before trial did not preclude it from seeking to sentence the defendant as a repeat violent offender because the defendant had articulated no prejudice from the untimely filing and the defendant could have obtained a continuance); State v. Boyd, No. W2010-01513-CCA-R3-CD, 2011 WL 2586811, at *6 (Tenn. Crim. App. July 1, 2011) (quoting Adams, 788 S.W.2d at 559) (holding that when the notice lacks the dates of incarceration for the qualifying prior convictions, the notice is substantially compliant and a defendant "'must show prejudice to obtain relief'").

We agree that the principles developed in these prior decisions addressing the statutory notice requirement for multiple, persistent, or career offenders generally provide the analysis that courts should apply when resolving questions arising under the statutory notice requirement for repeat violent offenders. As we recognized in Cooper, the language of these statutory notice requirements is similar, 321 S.W.3d at 507, and these statutory notice requirements serve similar purposes. See Adams, 788 S.W.2d at 559 (discussing the purposes served by the multiple, persistent and career notice requirement). Courts need not re-invent the analytical wheel for issues arising under the statutory notice requirement for repeat violent offenders and should apply the following principles.

The State bears the responsibility for providing notice of enhanced sentencing as a repeat violent offender and must always endeavor to comply fully with the statute, both in timing and content. Id. The State must provide some notice prior to trial. If the State fails entirely to provide notice prior to trial, the State is precluded from seeking enhanced sentencing as a repeat violent offender, and the defendant need not show prejudice to obtain this result. Cooper, 321 S.W.3d at 508. As for form, the better practice is for the State to provide notice by a separate, properly captioned document and not to include the notice in a document addressing several subjects. Benham, 113 S.W.3d at 705. Nevertheless, the statute does not prescribe a particular form, and we also decline to mandate a particular form. The form of the notice alone will almost never be a sufficient basis for precluding the State from seeking enhanced sentencing. Id. If notice is provided before trial, but notice is not timely filed, the defendant is entitled to a continuance "so the defendant will have forty-five (45) days between receipt of the notice and trial." Tenn. Code Ann. § 40-35-120(i)(2). Notice of enhanced sentencing need not be perfect, but it must be fair. Livingston, 197 S.W.3d at 713. A notice that fails to provide the defendant with any of the statutorily required relevant information is not fair notice and is insufficient. Adams, 788 S.W.2d at 559. On the other hand, if the content of the State's notice substantially complies with the statutory requirements, "an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." Id. ("Where an ambiguity or contradiction appears on the face of the notice, defendant has a duty to inquire further."). If the notice is filed late but still filed

- 12 -

prior to trial, or the notice is timely filed but is in some other way defective, the notice remains effective for purposes of enhanced sentencing, *unless* the defendant shows prejudice. Carter, 121 S.W.3d at 585.

Here, the State timely provided the defendant with notice of its intent to seek enhanced sentencing as a repeat violent offender. The notice was provided more than six months prior to trial. Although the document by which notice was provided advised the defendant of several purposes for which his prior convictions would be used, the document clearly and unambiguously informed the defendant of the State's intent to seek enhanced sentencing as a repeat violent offender.[4] As the majority in the Court of Criminal Appeals correctly recognized, however, the notice failed to identify specifically which of the defendant's listed prior convictions qualified him for sentencing as a repeat violent offender. See Tenn. Code Ann. § 40-35-120(i)(2) (requiring the notice to "set forth the nature of the" prior qualifying convictions). As the Court of Criminal Appeals majority also correctly noted, the notice failed to list the dates of the separate periods of incarceration the defendant had served for the qualifying convictions. Tenn. Code Ann. § 40-35-120(i)(2) (stating that the notice "shall set forth the dates of the prior periods of incarceration").

Furthermore, as the State concedes in its brief to this Court, the notice included inaccurate information about the date and location of the second-degree murder conviction and the date of the facilitation to commit second-degree murder conviction.[5] Despite these errors and omissions in the State's notice, we agree with the dissenting judge in the Court of Criminal Appeals that the notice, albeit imperfect, was sufficient to trigger the defendant's duty to inquire into the omitted and incorrect information. Adams, 788 S.W.2d at 559. The defendant simply failed to make any such inquiry. To the contrary, defense counsel expressly indicated at the beginning of the sentencing hearing that the defendant had no objection to the accuracy of his prior criminal record as listed in the presentence report. Having conceded the accuracy of his prior criminal record at the sentencing hearing, the defendant has failed to establish prejudice resulting from the omitted and inaccurate information. Indeed, the defendant has not even

---

[4] Again, we reiterate that the preferred practice is for the district attorney to provide notice by a separate, properly captioned document that complies *fully* and *completely* with all statutory requirements. This type of notice will ensure that the defendant receives fair warning of his exposure to enhanced sentencing and will obviate the need for protracted litigation over the sufficiency of the notice.

[5] For the defendant's second-degree murder conviction, the notice listed the date as May 3, 1994, and the county of origin as Shelby. But at the defendant's sentencing hearing, the State relied upon and introduced without objection an April 20, 1994 judgment of conviction for second-degree murder that originated in Haywood County. Moreover, the notice listed the date of the defendant's facilitation of second-degree murder as January 24, 1992, but at the sentencing hearing the State introduced without objection a judgment of January 14, 1992, for facilitation of second-degree murder.

attempted to establish prejudice. He did not challenge his sentence on appeal to the Court of Criminal Appeal. In this Court, the defendant argues that the State should be precluded from seeking enhanced sentencing if it fails to comply strictly with the statutory notice requirement. We decline to adopt such a drastic remedy where the statute itself does not expressly do so. Although the State's notice was not perfect, it constituted fair notice and unambiguously advised the defendant of the State's intent to sentence him as a repeat violent offender. It is true that the notice listed several of the defendant's prior convictions without identifying the specific qualifying convictions or the dates of his separate incarcerations on those convictions. Nevertheless, as the dissenting judge of the Court of Criminal Appeals noted, the defendant could have identified the predicate convictions for purposes of enhanced sentencing as a repeat violent offender because only two of the listed convictions qualified as such. While we certainly do not endorse the State's failure to comply strictly with the statutory notice requirement, the State provided sufficient notice to trigger the defendant's duty to inquire into the errors and omissions. The defendant has failed to establish that the omitted and inaccurate information adversely affected a substantial right—one of the necessary criterion to obtain relief via the plain error doctrine. Accordingly, we conclude that the defendant is not entitled to relief via the plain error doctrine.

## IV. Conclusion

For the reasons stated herein, the judgment of the Court of Criminal Appeals is reversed insofar as it set aside the defendant's enhanced sentence as a repeat violent offender and remanded for resentencing, and the judgment of the trial court is reinstated in all respects. It appearing the defendant is indigent, costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE