IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 26, 2021 Session

## STATE OF TENNESSEE v. MATHEW ANTHONY PERRY

**Appeal from the Criminal Court for Johnson County**
**No. 2018-CR-28     Lisa Rice, Judge**

_____

### No. E2020-00911-CCA-R3-CD

_____

A Johnson County jury convicted the defendant, Mathew Anthony Perry, of unlawful possession of a firearm by a convicted felon, and the trial court imposed a sentence of fifteen years' confinement.  On appeal, the defendant argues the trial court erred in sentencing him as a Range II offender, asserting the State's notice of enhanced punishment was deficient.  The defendant also argues the trial court erred in failing to grant a mistrial based upon alleged improper testimony.  After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.  However, we remand the matter for the sole purpose of ensuring that judgment forms were entered for each count of the indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Perry L. Stout, Mountain City, Tennessee, for the appellant, Mathew Anthony Perry.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Ken C. Baldwin, District Attorney General; and Leon Marshall, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On December 28, 2017, the defendant, Mathew Anthony Perry, and Brittany Arnold approached the home of Charlena and Christopher Johnson and exchanged gunfire with Mr. Johnson.  As a result, a Johnson County grand jury indicted the defendant with unlawful possession of a weapon by a convicted felon (count 1), five counts of felony

reckless endangerment (counts 2 through 6), and attempted theft of property between $1000 and $10,000 (count 7).[1]  Tenn. Code Ann. §§ 39-13-103; -14-103; -17-1307.  Prior to trial, the State filed a "Notice of Intent to Enhance/Impeach" which listed fourteen prior felony convictions.  The State presented the following evidence during trial.

Around 2:30 a.m. on December 28, 2017, Ms. Johnson woke to help her daughter who was sick.  While awake, Ms. Johnson stepped outside on the front porch and saw a truck pull into a parking area "across the road" from her home.  She described the truck as "a full-size truck with the lights across the top" and noted the truck was loud.  The truck parked behind a tractor and a trailer, and Ms. Johnson "heard them cut the engine off, and [she] heard two doors shut."  Ms. Johnson then saw a man and a woman walking up her driveway.  She alerted Mr. Johnson and gathered her three daughters in the living room.

Mr. Johnson went outside, and Ms. Johnson soon heard "hollering" followed by three to four gunshots.  Ms. Johnson did not see who fired the initial shot but stated she believed the shots were fired from different guns "[b]ecause one shot was louder than the other shots."  Mr. Johnson ran back inside and stated, "They're shooting at me."  He was scared, frantic, and "trying to figure out what to do."  Ms. Johnson called the police, and Mr. Johnson went back outside.  After the shooting ended, Ms. Johnson went outside and saw the truck "pulling out from behind the trailer on the other side of the road where [she] had seen it pull in at."  Ms. Johnson provided police with a description of the truck and indicated it drove towards Mountain City.

Mr. Johnson provided similar testimony, stating when Ms. Johnson alerted him to two people walking up his driveway, he "grabbed [his] pistol" and went out on the front porch "to see what was going on."  He saw a man and a woman "scrambling around in [his] driveway.  They were cussing and trying to go back down the road."  Mr. Johnson "stuck [his] pistol up in the air and shot," and then "saw the flash of somebody shooting back at [him] from down the road."  Mr. Johnson stated he "immediately turned to the gunfire and commenced firing back."  In total, he fired five additional shots after the initial warning shot, and the man and woman fired at least three or four shots.  During the gunfire, Mr. Johnson was worried that his children might be killed and felt a duty to protect them.  Mr. Johnson ran back inside the house to get another rifle and saw the truck "getting ready to pull out."  The truck drove towards Mountain City, and Mr. Johnson described the truck as being a "dark color," loud, and with "lights on the top of it."

The following day, Mr. Johnson examined his front porch and noticed that "one of the bullets had nicked the post."  Mr. Johnson took a picture of the area of the post "where the bullet had struck beside of me."  The picture was entered into evidence.  Mr. Johnson

---

[1] The attempted theft charge of count 7 was dismissed prior to trial.

- 2 -

did not find any additional bullets or notice any other damage to his home. Additional pictures of the Johnsons' home were entered into evidence which showed: the area the man and woman "parked their truck and hid it," several angles of the Johnsons' home and driveway, the surrounding roads, and "the RZR or side-by-side that [the defendant and Ms. Arnold] was (sic) supposedly coming to take." Mr. Johnson provided a statement to police on the night of the incident and reviewed the statement during trial. He did not recall the police suggesting that his warning shot was a bad idea and stated the man and woman were trespassing on his property.

While on duty on December 28, 2017, Deputy Jeffrey Norman of the Johnson County Sheriff's Office[2] received a "shots fired" call and a description of the truck involved in the shooting. He described the vehicle as a large truck that "had a loud exhaust and there was a light bar on the top of the vehicle." While en route to the Johnsons' home, Deputy Norman and Deputy Lipford encountered the suspect vehicle and conducted a felony traffic stop. The deputies "pulled both individuals out at gun point," identified and secured the individuals, and then spoke with them separately. Deputy Norman identified the defendant as the driver of the truck and Brittany Arnold as the passenger and noted he knew Ms. Arnold from prior experiences in law enforcement and "also through a relative."

The deputies placed Ms. Arnold in Deputy Norman's patrol vehicle while Deputy Lipford questioned the defendant. Deputy Norman overheard the defendant state that there was a firearm in the truck and Ms. Arnold described the firearm as a purple handgun. Deputy Lipford then removed the firearm from the glove compartment and rendered the gun safe. Deputy Norman stated the gun was not loaded, but the deputies also found a magazine in the glove compartment. They did not find any bullets in the vehicle. Deputy Norman identified the firearm for the jury and described it as a 9-millimeter SCCY handgun. After conducting an inventory search of the truck, the deputies had the truck towed and completed a Vehicle Tow-In Report which was entered into evidence. The report listed the defendant as the truck's registered owner.

Chief Deputy Joe Woodard of the Johnson County Sheriff's Office[3] responded to the scene around 3:55 a.m. Because it was dark, officers did not complete a search until later that day, and Mr. Johnson participated in the search by using a metal detector to locate shell casings. Ultimately, two shell casings were found near Poplar Ridge Road approximately 211 to 230 feet from the damaged post on the Johnsons' front porch. Deputy Woodard photographed the shell casings and the surrounding area, and the photographs

---

[2] At the time of trial, Deputy Norman served as a Mountain City Police Department Officer.

[3] At the time of trial, Deputy Woodard served as a sergeant with the Mountain City Police Department.

were entered into evidence. Deputy Woodard's crime scene diagram was also entered into evidence.

Deputy Woodard quickly developed the defendant and Ms. Arnold as suspects and conducted a recorded interview with the defendant around 5:00 a.m. at the Johnson County Sheriff's Office.[4] Lieutenant Shawn Brown also participated in the defendant's interview. Deputy Woodard stated the defendant signed the waiver of rights form but was not cooperative, noting the defendant "would talk to us about things, but not things pertaining to the incident. Just more or less he just didn't know what was going on." Though not said during the interview, Deputy Woodard recalled "that [the defendant] accused Brittany Arnold as being the one shooting the gun and not him."

Additionally, during the interview, the defendant refused to participate in a gunshot residue test and did not allow Deputy Woodard to photograph injuries to the palms of his hands. Deputy Woodard stated the injuries looked like the defendant "may have fallen at some point in time, and that's why I wanted to take the picture because I knew there was some red, reddish brown stain on the gun which we believe to be was blood, and I just wanted to take a photograph of his hands." Regarding the gunshot residue test, when Deputy Woodard asked the defendant to submit to the test, the defendant requested an attorney. Deputy Woodard further testified that "whenever I asked [the defendant] to do a gunshot residue, [the defendant] said that he'd been firing guns all day at his house. And that's basically what he said, he fired guns all the time at his house. Well, at his girlfriend's house." Deputy Woodard explained to the defendant that the gunshot residue test concerns "any firearms within the past four hours," and the defendant seemed concerned about the timeline because the defendant stated "he'd shot guns all day, so that day." The defendant did not object during this testimony.

The investigation continued as Deputy Woodard obtained a search warrant for the defendant's DNA, cell phone records, and Facebook records. He also requested DNA analysis on the "reddish brown stain" found on the firearm removed from the defendant's truck. Deputy Woodard testified that the DNA profile obtained from the stained area on the slide of the pistol matched the defendant, but the DNA profile obtained from the textured area of the pistol and the trigger was inconclusive. The Tennessee Bureau of Investigation ("TBI") forensic biology report was entered into evidence. Deputy Woodard also reviewed the TBI firearms report which addressed the SCCY, Model CP-2, 9-millimeter Luger caliber pistol, the magazine found in the defendant's truck, a Blazer 9-millimeter Luger caliber cartridge from the magazine, and two Blazer 9-millimeter Luger

---

[4] The State attempted to play the recorded interview for the jury but was unsuccessful due to the poor sound quality.

caliber cartridge cases. The firearms report was entered into evidence and indicated the shell casings collected were fired from the pistol. Finally, Deputy Woodard noted that Ms. Arnold submitted to a gunshot residue test. Ms. Arnold's gunshot residue test report was entered into evidence and indicated Ms. Arnold "could have fired, handled, or was near a gun when it was fired."[5] The State then rested its case-in-chief, the defendant moved for a judgment of acquittal, and the trial court denied the motion.

The defendant then testified and provided his version of the events of December 28, 2017. Prior to the incident, he celebrated Christmas with his fiancée, Kristie Cooke, and her children. Afterwards, the defendant went home, Ms. Arnold called him, and the defendant picked Ms. Arnold up in his truck around 1:00 or 1:30 a.m. The defendant explained he met Ms. Arnold through "mutual acquaintances" and "through Facebook."

As the two rode around, Ms. Arnold "said she wanted to go to her uncle's, and get money." The two then drove to the Johnsons' home, though the defendant did not know the home belonged to the Johnsons at the time. The home had "a pretty steep driveway" that he could not maneuver in his truck so the defendant parked at the end of the road. He and Ms. Arnold then walked up the driveway. The defendant stated it was dark, and he did not see anyone as they approached the top of the driveway. The defendant told Ms. Arnold, "I don't think we really need to be here. I don't think he's up."

As they started to leave, Ms. Arnold began arguing with the defendant, and Mr. Johnson then fired a gun. The defendant stated that the first bullet came within ten feet of him and Ms. Arnold and that he felt "[e]xtremely terrified." The defendant "took off running" as Ms. Arnold returned gunfire. The defendant thought he was going to die, stating "[i]t was a lot of gunfire." As he ran, the defendant fell and "slid down the gravel driveway while they were exchanging gunfire." The defendant testified he was not paying attention to Ms. Arnold during the exchange, noting "[a]ll I could care about was myself."

The defendant and Ms. Arnold returned to his truck. Ms. Arnold had a gun in her hand, and the defendant took it from her as he "did not feel safe with her having a loaded weapon in her hand." The defendant removed the magazine from the gun and "took the bullet out of it, and put it in the glove compartment because I didn't want [Ms. Arnold] to have a loaded gun after this just happened." The defendant stated he "unloaded it to render, you know, it safe for me or anybody else that may come in contact."

After leaving the scene, the police pulled him over, and the defendant disclosed that there was a gun in the truck. The defendant again explained he did not feel safe being in

_____

[5] All of the reports entered into evidence were stipulated to by the parties.

the truck with Ms. Arnold and a loaded gun "[b]ecause she just shot at these people. What do you think she would do to me because I'm a witness now. She's with me and I mean if she's got the capability to shoot at these people, you never know what she's got the capability of doing."

The defendant admitted to having a "rough past" and not being permitted to handle firearms. However, the defendant stated:

> [W]hen your life is in danger, it doesn't matter if you're a convicted felon or not. I mean you don't think about that. That comes later. My life is more important right now than what could happen because I touched this gun. What could happen if I don't touch this gun and unload it, what could happen to my life.

More specifically, the defendant admitted he had approximately 14 felony convictions in the ten years preceding this incident, including one violent felony conviction and one felony perjury conviction. Regarding his prior felonies, the defendant stated, "I pled guilty to them because I was guilty of the crime." Regarding the crimes for which he was on trial, the defendant stated, "I didn't do it this time, so that's why we're here."

During cross-examination, the defendant claimed he did not know Ms. Arnold had a gun with her prior to the shooting but admitted he saw her shooting at Mr. Johnson. When Ms. Arnold entered the truck after the shooting, the defendant took the gun and a holster from her. As such, the defendant admitted to having a holster on him when he was stopped by the police, noting he put the holster in his pocket because he was scared. The defendant stated, "I know that I got a gun in my truck and I'm not supposed to have it. . . . And even if it's not my gun, it's still in my vehicle." Regarding the ownership of the gun, the defendant stated Ms. Arnold purchased the gun from Ms. Cooke about six months prior to this incident. At the time of the shooting, Ms. Cooke might have been the registered owner of the gun "but she was not the physical owner."

The defendant's fiancée, Kristie Cooke, also testified. Ms. Cooke reviewed the firearm that was previously entered into evidence and testified that the gun was hers. However, Ms. Cooke stated she sold the gun to Ms. Arnold for about $200 in early December 2017, approximately two to three weeks before this incident. In addition, Ms. Cooke recalled that around 5:00 a.m. on December 28, 2017, Officer Shawn Brown questioned her at her home about the gun, and she stated the gun did not belong to her at the time. Ms. Cooke stated she has no prior felony convictions, and though she is engaged to the defendant, she would not lie for him. The defense then rested.

- 6 -

Officer Shawn Brown of the Johnson County Sheriff's Office testified in rebuttal for the State regarding his interview with Ms. Cooke on December 28, 2017. During the interview, Ms. Cooke stated that she owned the purple 9-millimeter handgun recovered from the defendant's truck. Officer Brown did not recall the exact line of questioning related to the ownership of the gun but did recall Ms. Cooke "essentially admitted that it was her weapon." Further, Officer Brown concluded that "[b]ased on what [Ms. Cooke] told me, I believed her to be the lawful owner of the weapon." The State again rested its case.

The jury acquitted the defendant of five counts of reckless endangerment but convicted him of unlawful possession of a firearm by a convicted felon and imposed a $2500 fine.[6] For the conviction, the trial court sentenced the defendant to fifteen years' incarceration. The defendant filed a motion for a new trial wherein he challenged the sufficiency of the evidence supporting his conviction, the State's notice of enhancement, and, for the first time, Deputy Woodard's testimony regarding "statements that the [d]efendant made after he had invoked his right to counsel. Particularly[,] that the [d]efendant stated, 'He had fired guns at his house the day before.'" The trial court denied the defendant's motion for a new trial, and this timely appeal followed.

*Analysis*

Initially, we pause to address our concerns with the appellant's brief. While the appellant's brief technically complies with the requirements of Tennessee Rules of Appellate Procedure 27, his brief at best meets the bare minimum standards for appellate advocacy. Tenn. R. App. P. 27. For example, the appellant's statement of the facts recites no testimony from the trial or describes any facts presented at trial which would provide this Court with an understanding of the crime or what took place at trial or during the sentencing hearing. Additionally, as discussed further *infra*, each of the appellant's issues could be deemed waived for numerous reasons. Finally, despite the fact the State argued each of the issues should be considered waived, the appellant failed to file a reply brief or move to have the record supplemented with the sentencing hearing, especially considering one of his two challenges concerns the sentence imposed by the trial court.

---

[6] The only judgment form included in the record on appeal is the judgment for the defendant's conviction for unlawful possession of a weapon by a convicted felon. While the transcript notes the defendant was acquitted of the remaining charges, the record is void of judgments reflecting the jury's verdicts on those charges. *See State v. Berry*, 503 S.W.3d 360, 363 (Tenn. 2015) ("When a jury returns a not guilty verdict (or when the defendant is otherwise entitled to be discharged), the trial court is nonetheless required to 'enter judgment accordingly.'" Tenn. R. Crim. P. 32(e)(3) (including no details about the document to be used in such instances)).

Notwithstanding our concerns with the appellant's brief, we will, in the interest of justice, address the issues presented.

### I. Notice of Enhancement

The defendant argues the trial court erred in sentencing him as a Range II offender, asserting the State's notice of intent to seek enhanced punishment "was so deficient that it constitutes no notice." Specifically, the defendant argues the notice was inadequate because it was combined with the State's notice of impeachment and did not include "precise information on prior convictions, any mention of [Tennessee Code Annotated section] 40-35-202, [an] explanation of how the Florida offenses relate[d] to Tennessee offenses, or the State's intent on what range they [sought]." The State asserts its "pre-trial notice of enhanced punishment substantially complied with the Sentencing Act, and [the] defendant failed to show prejudice from any perceived errors. Thus, the trial court properly sentenced [the] defendant as a Range II offender." Based upon the record provided, we agree with the State.

Under Tennessee's criminal sentencing statutes, "multiple, persistent, career, and repeat violent offenders are subject to enhanced sentences." *State v. Patterson*, 538 S.W.3d 431, 437 (Tenn. 2017) (citation omitted). Thus, "[i]f the State intends to seek an enhanced sentence for a defendant in any of these offender classifications, it must provide the defendant with notice of its intent to do so." *Id.* (citing Tenn. Code Ann. § 40-35-202(a) (2014)). The applicable statute provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

Tenn. Code Ann. § 40-35-202(a). Our supreme court has stated, "[w]ith regard to the form of the notice, this Court has commented that 'the practice of 'embedding' information inside an unrelated document is problematic' and has instructed that 'the filing of separate

documents properly captioned is to be preferred.'" *Patterson*, 538 S.W.3d at 438 (quoting *State v. Benham*, 113 S.W.3d 702, 705 (Tenn. 2003)). Regarding the content of the notice, the supreme court "has often emphasized that the responsibility for asserting 'the appropriate sentencing status in the first instance' lies with the State and that the State 'may not shift these burdens to an accused by filing what is essentially an empty notice.'" *Id.* (quoting *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990)). However, "where the State substantially complies 'an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief.'" *Id.* (citations omitted).

First, we note that our review of this issue is limited as the appellate record does not contain a transcript of the sentencing hearing. As the appellant, it was the defendant's duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). If this Court is unable to fully review an issue based on the defendant's failure to include a full transcript, the issue has been waived. *See State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998) (failure to include trial transcript on appeal resulted in waiver of sentence challenge). Because the defendant failed to include the transcript of the sentencing hearing in the record on appeal, he has waived his challenge to the trial court's decision to sentence him as a Range II offender.

Despite the defendant's waiver, our review of the record indicates the trial court sentenced the defendant as a Range II, multiple offender for his conviction for unlawful possession of a firearm by a convicted felon, a Class B felony. Tenn. Code Ann. §§ 39-17-1307; 40-35-106. A Range II offender convicted of a Class B felony faces a sentencing range between twelve and twenty years. Tenn. Code Ann. § 40-35-112. Thus, the trial court imposed a within-range sentence when it ordered a sentence of fifteen years' confinement. The defendant, however, asserts the trial court should have sentenced him as a Range I offender because the State filed a deficient notice of its intent to seek enhanced punishment. We disagree.

The State filed its notice of enhancement in advance of trial on October 17, 2019. The notice was entitled, "Notice of Intent to Enhance/Impeach" and listed fourteen prior felonies upon which the State intended to rely in seeking to enhance the defendant's punishment. The listed felonies included: grand larceny (7 counts), credit card fraud (3 counts), aggravated assault, tampering with evidence, forgery, and perjury. The notice listed that the prior felonies occurred in Florida, noted the dates of convictions, and included the length of punishment imposed for the convictions. Additionally, the notice stated: "The State also intends to use these prior convictions to enhance the [d]efendant's punishment, in sentencing." Thus, the record indicates the notice provided the prior felony convictions, the date the convictions were rendered, and the sentencing imposed for the

convictions as required by statute. Tenn. Code Ann. § 40-35-202(a). Though the defendant challenges the notice as deficient, his argument is misplaced as our review of the record indicates the trial court properly classified the defendant as a Range II offender for his Class B felony conviction based upon the prior convictions presented by the State in its notice of enhancement. The defendant is not entitled to relief.

## II. *The Testimony of Deputy Woodard*

The defendant argues the trial court erred in not declaring a mistrial after Deputy Woodard testified that the defendant told him that he had fired a gun at his girlfriend's house. The defendant argues "[t]he State's line of questioning of [Deputy] Woodard starting on page 87 of the trial transcript was inappropriate" but concedes he "chose not to object because he did not want to bring more attention to this line of questioning." The defendant asserts Deputy Woodard's testimony created "the thought of [the defendant] regularly firing guns as a dangerous felon" and "poisoned [the jury's] mind."[7] The State asserts the defendant has waived this issue for failing to make a contemporaneous objection during trial and for failing to request a mistrial. The State further asserts the defendant is not entitled to plain error review "because defense counsel concedes that he strategically waived the issue in the trial court." We agree with the State.

Here, the record makes clear this issue is waived as the defendant failed to contemporaneously object or request a mistrial after Deputy Woodard made the allegedly "inappropriate" statements. *See* Tenn. R. App. P. 36(a) (providing that appellate courts need not grant relief when the objecting party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). For this reason alone, the defendant is not entitled to relief. However, the State provided additional argument on appeal as to why the defendant is not entitled to plain error relief as to this issue, and though not requested by the defendant, we will briefly address this issue under plain error.

Under the plain error doctrine, a defendant may obtain relief only if all of the following criteria are satisfied: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the issue was not waived for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *State v. Adkisson*, 899

---

[7] This is our best interpretation of the defendant's argument based upon the poorly structured argument presented in his appellate brief. As previously addressed, the defendant's brief is lacking in both explanation of argument and legal authority to support the same. For this issue, the defendant failed to cite to any specific statements in the record with which he takes issue, other than by generally citing two page numbers, and failed to properly cite to any legal authority in support of this claim.

S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010). As previously noted, as it relates to the alleged improper testimony of Deputy Woodard, the defendant concedes he "chose not to object because he did not want to bring more attention to this line of questioning." Thus, the defendant admits this issue was waived for tactical reasons, and he cannot satisfy the criteria necessary to warrant plain error review. *Id.* Furthermore, during his trial testimony, the defendant admitted to handling the gun after the incident and that he was "not supposed to have" a gun in his truck. This issue is without merit.

### *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court. Additionally, we remand the matter for the sole purpose of ensuring that judgment forms were entered for each count of the indictment.

_____
J. ROSS DYER, JUDGE