IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 16, 2019 Session

## STATE OF TENNESSEE v. BOBBY EUGENE BLAYLOCK

**Appeal from the Circuit Court for Cheatham County**
**No. 18305    David D. Wolfe, Judge**

_____

### No. M2017-02136-CCA-R3-CD
_____

Following a trial, a jury convicted Defendant, Bobby Eugene Blaylock, of kidnapping, aggravated kidnapping, attempted rape, robbery, and theft valued at more than $1,000 but less than $2,500, for which the trial court imposed a total effective sentence of forty-four years' incarceration.  On appeal, Defendant asserts that the trial court erred by failing to find that the mitigating factor found in Tennessee Code Annotated section 39-13-304(b)(2) applied to Defendant's case.  The State cross-appeals, arguing that the trial court erred by finding that the State's "Notice of Defendant's Status as a Repeat Violent Offender" (the "State's Notice") was deficient and by failing to sentence Defendant as a repeat violent offender.  Following a thorough review, we modify Defendant's sentence for aggravated kidnapping to life without possibility of parole.  We remand for the entry of an amended judgment sentencing Defendant, as a repeat violent offender, to life without possibility of parole in Count 2 and for the trial court to impose a sentence on the merged conviction of kidnapping in Count 1.  In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed as Modified and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

James L. Baum, Pegram, Tennessee, for the appellant, Bobby Eugene Blaylock.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Ray Crouch, District Attorney General; and Kristin Kyle-Castelli and Doug Thurman, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

This appeal arises from an incident that occurred at the Cheatham State Wildlife Management Area in April 2015. The facts of the case, taken from Defendant's presentence report, are as follows:[1]

Deputies of the Cheatham County Sheriff's Office were dispatched at 1:48 p.m. to [a residence on] Dry Creek Road in Ashland City, Tennessee after the homeowner call[ed] 911 to report a woman coming to his home [who] reported to have been raped. Deputies arrived to find [the victim] present with duct-tape on her wrists, clothing extremely disheveled and obvious injuries to the face and head regions. [The victim] told deputies that her cousin, [Defendant], had assaulted her, duct-taped her and raped her while they were in the game reserve about one-fourth of a mile from the aforementioned residence. Deputies were able to locate the crime scene by identifying items of evidence in the approximate area described by [the victim].

Special Agent Boyd responded to the Tri-Star/Centennial Hospital in Ashland City, Tennessee at 4:17 p.m. to further interview [the victim] who was being treated at the said facility. [The victim] stated that she and her cousin, [Defendant], went to Nashville on the morning of April 3, 2015, to purchase tacos and alcohol prior to [Defendant] surrendering himself to the Cheatham County Sheriff's Office on a warrant regarding a violation of the sex offender registry. [The victim] stated that after returning from Nashville, they went to the Cheatham Wildlife Management area off of Dry Creek Road to eat and drink. [The victim] stated that while there, [Defendant] choked her twice until she passed out, punched her repeatedly in the face and head, restrained her wrists together with duct-tape, and . . . wrapped duct-tape around her mouth and head. [The victim] continued to describe how [Defendant] bent her over in the 1997 Green Ford Expedition, raped her repeatedly by digitally penetrating her both vaginally and anally, attempting to penetrate her with his penis both vaginally and anally, and penetrating her with a bottle. [The victim] also stated that during this incident, [Defendant] threatened her with a metal crow-bar type instrument

---

[1] The record on appeal does not include transcripts of Defendant's trial. The State introduced the presentence report as an exhibit at Defendant's sentencing hearing without objection by Defendant.

he was holding. [The victim] further described how [Defendant] duct-taped her to a tree, stole her vehicle, including her wallet that was inside containing approximately $400.00 in cash. The Cheatham County Sheriff's Office had an active warrant on [Defendant] for [a] sex offender registration violation that was entered into the National Crime Information Center (NCIC). [Defendant] was located and arrested by the Metropolitan Nashville Police Department on the morning of April 4, 2015, while driving the stolen Ford Expedition vehicle. The M.N.P.D. charged [Defendant] with vehicle theft between $10,000 and $60,000, unlawful possession of drug paraphernalia, and driving without a license. He was book[ed] in the Davidson County Criminal Justice Center with a $75,000 bond. The Cheatham County Sheriff's Office placed a "hold" on [Defendant] for a bond hearing on the violation warrant.

On April 4, 2015, Special Agents Joseph Boyd and Steven Kennard and Detective Miller interviewed [Defendant] at the Davidson County Criminal Justice Center. During the interview, [Defendant] admitted to taping [the victim's] hands and mouth, taping her to a tree, and punching her repeatedly and stealing her truck, however, he denied raping [the victim] and threatening her with a crow-bar/tire-iron.

On April 4, 2015, Special Agent Boyd and Detective Miller conducted a search of the 1997 Ford Expedition with the verbal consent of [the victim] while the vehicle was in the custody of the M.N.P.D. and located at the Metro Impound Lot at 1201 Freightliner Drive in Nashville. This verbal consent was followed by written consent obtained subsequently by Special Agent Boyd. Special Agent Boyd took photographs of this search including all items of evidence recovered. Notable items identified and/or recovered include a metal tire tool similar in appearance to a crow-bar located in between the front driver's seat and the center console, one piece of gray duct-tape, and one empty duct-tape roll.

On April 6, 2015, Special Agent Boyd received documentation from the T.B.I.'s Tennessee Fusion Center detailing [Defendant's] history including criminal history. Around 1995 in Kansas, [Defendant] was charged with rape and convicted of aggravated indecent liberties with a child (13 year old victim) and sentenced to 51 months. Around 1997, in Oklahoma, [Defendant] was convicted of [three] counts of first degree rape, assault, and battery with a dangerous weapon (17 year old victim) and sentenced to cumulative 35 years for which he was released in 2011.

[Defendant] returned to Kansas to serve out remaining time on a probation violation until he moved to Tennessee in 2013.

The Cheatham County Grand Jury subsequently issued a presentment, charging Defendant with especially aggravated kidnapping, aggravated rape, aggravated robbery, and theft of property valued at $1,000 or more but less than $10,000 for the offenses against the victim in case number 17845. On September 13, 2015, the State filed a Notice of Impeachment Pursuant to [Tennessee Rule of Evidence] 609 and a Notice to Seek Enhanced Punishment as Persistent/Career (Range III) Offender. The District Public Defender's Office was initially appointed to represent Defendant, but after it withdrew from the case on January 12, 2016, new defense counsel was appointed to represent Defendant. On May 23, 2017, the State's Notice was filed.

On July 6, 2017, the grand jury issued a superseding presentment, charging Defendant with especially aggravated kidnapping, aggravated kidnapping, aggravated rape, aggravated robbery, and theft of property valued at more than $1,000 but less than $2,500 in case number 18305. At an August 30, 2017 motion hearing, the State entered a nolle prosequi as to case number 17845 and asked the trial court to "incorporate the file from the initial [i]ndictment . . . into the superseding indictment which is case number 18305[,]" to which the trial court replied, "All right." Following a trial on September 5, 2017, a jury found Defendant guilty of kidnapping, aggravated kidnapping, attempted rape, robbery, and theft of property valued at more than $1,000 but less than $2,500.

At a sentencing hearing conducted October 11, 2017, the State introduced Defendant's presentence report, along with certified judgments of conviction from Oklahoma showing that Defendant had been convicted of three counts of first degree rape and one count of assault and battery with a dangerous weapon and that Defendant was on supervised probation out of Oklahoma at the time he committed the instant offenses. Additionally, the State presented evidence that Defendant had been convicted of aggravated indecent liberties with a child in Kansas. The victim then read a victim impact statement, detailing the devastating effect Defendant's crimes had on her life.

At the close of proof, Defendant argued that the State had not given proper notice of his status as a repeat violent offender, arguing that the notice provided the "nature of the prior conviction offenses" but did not "set forth the dates of prior periods of incarceration." Defendant further asserted that the State "never gave notice on the superseding indictment[,]" which added aggravated kidnapping to the list of charges against Defendant. The State responded that it incorporated the court file in case number 17485 into the instant case before the trial. Further, the State asserted that it

corresponded with [defense counsel] on January 9th of 2017 and informed [defense counsel] that the State would be pursuing the information to see if [Defendant] would qualify under the repeat violent offender [statute]. On May 23rd, 2017, after . . . plea negotiations fell through, the State gave additional notice and additional time for [defense counsel] and [Defendant] prior to the filing of this notice which would foreclose all possible settlement. The Defense was on notice as of January 9th, 2017, the first date, that this D.A. was representing the State of Tennessee on this case.

So it falls short of saying that they were not on notice of the State's intent to do so, and the delay on the notice was actually a delay in the attempt to see if plea negotiations could occur.

The State noted that there was no objection from Defendant prior to trial of insufficient notice and argued that the Defendant "understood from the get-go that . . . the State would be pursuing a repeat violent offender status on [Defendant]."

The trial court determined that Defendant met the qualifications of a repeat violent offender based on the prior convictions listed in the State's Notice; nonetheless, the trial court concluded that, because the State's notice was deficient, it could not consider those convictions to sentence Defendant as a repeat violent offender. The trial court stated:

For the record . . . this Court does find that the proof has established that there were two qualifying convictions and that this Defendant did in fact serve two separate periods of incarceration, one in Oklahoma and one in Kansas. And that those qualifying convictions would indicate that he would be a repeat violent offender.

However, when I look at the statute 40-35-120 of the Tennessee Code I am required to look at the notice requirement. There has been an objection raised under that, and under that section, which I am quoting, under (i)(2) of that section, "The District Attorney General shall file a statement with the Court and the Defense Counsel within 45 days of the arraignment pursuant to Rule Ten of the Rules of Criminal Procedure that the Defendant is a repeat violent offender." That is the notice requirement and that deals with the timeliness issue, and that has been one issue that's been raised.

I think the [State] is right that the timeliness issue is one that can be cured because you are entitled to a delay or a continuance if in fact that timeliness becomes an issue, and it would result in at least an entitlement to

a continuance by the case law. And it says that in the statute, "If the notice is not filed within 45 days, the Defendant shall be granted a continuance so the Defendant will have 45 days between receipt of the notice and trial."

When you go on then to look at the other part of that notice requirement, it says that, "The statement shall set forth the dates of the prior periods of incarceration as well as the nature of the prior conviction offenses." And then the argument is made as to whether or not the notice that's been made in this case is deficient or does it satisfy the requirements.

The case that I am relying upon, for the record, is the *State v. Cooper* [321 S.W.3d 501 (Tenn. 2010)], which is a Tennessee Supreme Court decision that was issued September 21st, 2010. In that case it was the same basic issue that was raised about the sufficiency of the notice and whether the notice itself was sufficient or deficient.

The . . . Trial Court found that there were qualifying convictions and that there were two periods of incarceration that were met, and went ahead and found that the notice was cured by the post filing of a document called The Sentencing Position by the District Attorney.

And . . . the Supreme Court basically said that, and I want to look at the language so that I can be sure of this. In that case the record says that, "The record established that what occurred at the trial, contrary to the mandate of the Tennessee Code Annotated, the pre-trial filing on May 12th, 2003 failed to state that Mr. Cooper was a repeat violent offender. The pre-trial filing also failed to set forth the nature of the sodomy conviction as a qualifying prior conviction and the dates of the prior period of incarceration, both of which are required under section 40-35-120(i)(2). As a result of these omissions, the May 12th, 2003 filing did not qualify as notice pursuant to the repeat violent offender statute. The failure to file this notice prior to trial breached a clear and unequivocal rule of law that post-trial filings of the Sentencing Position failed to cure. Moreover, there's no indication that Mr. Cooper waived the issue [for] tactical reasons. Accordingly, the first, second and fourth criteria for plain error have been established."

They then go on to talk about whether that adversely affected a substantial right, and then they reversed it to send it back for sentencing because of the fact that that notice did not comply.

So when I look at the record in this case, the Pre-Sentence Notice, even doing away with the issue of the timeliness, the notice cites the rape convictions in the State of Oklahoma and then gives a sentence of 25 years. What I'm referring to is the [State's] Notice. It clearly puts the Defendant on notice that the State is pursuing a repeat violent offender. And it goes further to say that it was three qualifying convictions for rape, and then it sets out that the sentence was 25 years.

Reading this case and the statute together, it appears that [the notice] must also contain the qualifying convictions and the periods of incarceration, and the *State v. Cooper* indicates that the failure to include the actual periods of incarceration disqualifies this as a proper notice.

So therefore, the Court finds that the notice that was filed in this case for a repeat violent offender does not meet the criteria of the statute and [] Defendant cannot then be qualified as a repeat violent offender in this case even though the convictions are qualifying. And . . . I'm stating this for the record, I do find that the proof has established beyond a reasonable doubt of the prior convictions and the period of incarceration, and this is solely upon the notice requirement of the statute that the Court is making its decision.

Based on Defendant's prior convictions for three counts of rape, one count of assault and battery with a dangerous weapon, and one count of aggravated indecent liberties with a child, the trial court determined that Defendant was a Range II, multiple offender. The trial court found that no mitigating factors applied to Defendant's case but that several enhancement factors were applicable. Specifically, the trial court considered that Defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range; that the personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great; that the offense involved a victim and was committed to gratifying Defendant's desire for pleasure or excitement; that Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and that, at the time the felony was committed, Defendant was released on probation in one case and was on bail in another case.

The trial court merged the kidnapping conviction in Count 1[2] into the aggravated kidnapping conviction in Count 2 and sentenced Defendant, as follows:

---

[2] In sentencing Defendant, the trial court properly merged the conviction for kidnapping in Count 1 into the conviction for aggravated kidnapping in Count 2. We note, however, the trial court failed to impose a sentence in Count 1, and the record does not contain a separate judgment for that count. Our supreme court has provided guidance as to the proper procedure for recording judgments of merged

| Count | Offense | Class | Range | Sentence |
|-------|---------|-------|-------|----------|
| 2 | Agg. kidnapping | B felony | Range II, multiple offender | 20 years at 100% |
| 3 | Attempted rape | C felony | Range II, multiple offender | 10 years at 35% |
| 4 | Robbery | C felony | Range II, multiple offender | 10 years at 35% |
| 5 | Theft over $1,000 | D felony | Range II, multiple offender | 8 years at 35% |

After finding that Defendant was an offender whose record of criminal activity was extensive, the trial court ordered Defendant to serve his sentences consecutively, for a total effective sentence of forty-eight years to serve in the Tennessee Department of Correction.

The trial court entered the judgments of conviction on October 26, 2017, and the State filed a timely notice of appeal the same day. On November 6, 2017, Defendant filed a timely motion for new trial. On February 27, 2018, this court stayed further proceedings in the State's appeal pending the trial court's ruling on Defendant's motion for new trial.

At a hearing on the motion for new trial, the State conceded that Defendant should have been sentenced to a Class E felony in Count 5, rather than a Class D felony. Accordingly, the trial court amended Defendant's sentence for Count 5 to four years, resulting in an effective sentence of forty-four years' incarceration. The trial court denied the motion for new trial in all other respects. Regarding the enhancement and mitigating factors considered by the court during sentencing, the trial court explained:

> [I]t is this Court's opinion that the factors in this case have been properly considered. The facts of the case . . . [are] that the victim in the case was bound and at some point was tied. At least possibly tied to a tree. But in any event, when she was left she was tied, and in fact, when she went to the neighbor's house her hands were still tied in such a fashion that it does not appear to me that it was an attempt by [Defendant] to simply release her as was envisioned by the mitigating factors in the kidnapping

convictions. *See State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015) (stating that "the best practice is for the trial court to impose a sentence on each count and reflect the sentence on the respective uniform judgment document"). Accordingly, on remand, the trial court should impose a sentence for Count 1 and enter a separate judgment for that conviction. The trial court should also note in the "Special Conditions" box that the conviction in Count 1 merges with the greater offense in Count 2.

- 8 -

statute that [trial counsel] was arguing. That she was left bound, he may have driven off and left her, but she was nonetheless left bound and her freedom was limited by that. So that's the reason I did not apply that as a mitigating factor, and I still believe that it was not a proper mitigating factor.

I considered all of the other mitigating factors on the record and the Court did not find any of those to apply. In addition to that, I found the enhancement factors I believe properly. It is my opinion that the victim who testified that she was physically assaulted and digitally raped by this defendant and that she was kidnapped, and according to her testimony she was injured and that she had suffered psychological injury as a result of that. And I believe that that does constitute serious bodily injury necessary for the enhancement, and for that reason I found that to be an enhancement factor.

The trial court filed an amended judgment of conviction in Count 5 on June 14, 2018, and Petitioner filed a timely notice of appeal on July 10, 2018. This court then consolidated the two appeals under the instant docket number.

## Analysis

### A. Jurisdiction

Initially, Defendant challenges this court's jurisdiction to hear the State's appeal. As in any other appeal before this court, our first concern is whether this court is authorized to hear the case. The State's notice of appeal indicates that the State relied on Tennessee Code Annotated section 40-35-120 to confer appellate jurisdiction, which provides, in relevant part, that "[t]he finding that a defendant is or is not a repeat violent offender is appealable by either party." Tenn. Code Ann. § 40-35-120(h) (2017). "When a statute affords a state or the United States the right to an appeal in a criminal proceeding, the statute will be strictly construed to apply only to the circumstances defined in the statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008) (citing *Carroll v. United States*, 354 U.S. 394, 400 (1957); *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002)). Defendant asserts that the State's appeal is not proper under Tennessee Code Annotated section 40-35-120(h) because the trial court never reached the question of whether he was a repeat violent offender and only ruled that the State failed to give proper notice. We disagree, however, with Defendant's characterization of the trial court's ruling.

Here, the trial court determined that "the notice that was filed in this case for a repeat violent offender does not meet the criteria of the statute and [] *Defendant cannot then be qualified as a repeat violent offender* in this case even though the convictions are qualifying." The trial court then sentenced Defendant as a Range II, multiple offender on all offenses. Thus, for the purposes of sentencing Defendant on aggravated kidnapping—the conviction the State asserted was a "violent offense" under the repeat violent offender statute—the trial court concluded that he was not a repeat violent offender and failed to impose a sentence of life without parole as required by the statute. *See* Tenn. Code Ann. § 40-35-120(d)(1)(H); (g) (2017). Under these circumstances, we conclude that the State has a right to an appeal under Tennessee Code Annotated section 40-35-120(h), and this court has jurisdiction to consider the claim raised by the State.

### B. Sufficiency of the State's Notice

Pursuant to Tennessee Code Annotated section 40-35-120(a)(5)-(6), "[a] 'repeat violent offender' is a defendant who . . . [i]s convicted in this state on or after July 1, 1995, of any offense classified in subdivision (d)(1) as a violent offense; and . . . [h]as at least one (1) prior conviction for an offense classified in subdivision (d)(1) or (d)(2) as a violent offense[.]" Tenn. Code Ann. § 40-35-120(a)(5)-(6) (2017). Under subdivision (d)(1), aggravated kidnapping and rape are classified as violent offenses. Tenn. Code Ann. § 40-35-120(d)(1)(H)-(I). To qualify as a "prior conviction" under subdivision (a)(5)-(6), there must have been "at least one (1) separate period of incarceration for the commission of a predicate offense" before committing the instant offense. Tenn. Code Ann. § 40-35-120(e)(1)(C) (2017). "'Prior convictions' include convictions under the laws of any other state, government or country that, if committed in this state, would have constituted a predicate offense . . . if there are separate periods of incarceration in the other state . . . ." Tenn. Code Ann. § 40-35-120(e)(4) (2017). If a defendant has a sufficient number of prior convictions to qualify for sentencing as a repeat violent offender, a trial judge must reject any plea bargain that does not recommend sentencing the defendant as a repeat violent offender. Tenn. Code Ann. § 40-35-120(f) (2017). Before imposing the sentence of life without possibility of parole, the trial court must find, beyond a reasonable doubt, that the defendant meets the requirements to be declared a repeat violent offender. Tenn. Code Ann. § 40-35-120(g) (2017).

The State is required to give notice of its intent to seek enhanced sentencing as a repeat violent offender. Tennessee Code Annotated section 40-35-120 provides:

> The district attorney general shall file a statement with the court and the defense counsel within forty-five (45) days of the arraignment pursuant to Rule 10 of the Rules of Criminal Procedure that the defendant is a repeat violent offender. The statement, which shall not be made known to the jury

determining the guilt or innocence of the defendant, shall set forth the dates of the prior periods of incarceration, as well as the nature of the prior conviction offenses. If the notice is not filed within forty-five (45) days of the arraignment, the defendant shall be granted a continuance so that the defendant will have forty-five (45) days between receipt of notice and trial.

Tenn. Code Ann. § 40-35-120(i)(2) (2017). The notice "provides defendants with fair notice of their exposure to enhanced sentencing, orders plea-bargaining, enables defendants to make informed decisions before pleading guilty, aids defendants in developing trial strategy and preparing for sentencing hearings, and assists defendants 'in evaluating the risks and charting a course of action before trial.'" *State v. Patterson*, 538 S.W.3d 431, 438 (Tenn. 2017) (quoting *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990)) (internal footnote omitted). "A notice that fails to provide the defendant with any of the statutorily required relevant information is not fair notice and is insufficient." *Id.* at 442 (citing *Adams*, 788 S.W.2d at 559). However, "if the content of the State's notice substantially complies with the statutory requirements, 'an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief.'" *Id.* (quoting *Adams*, 788 S.W.2d at 559); *see also State v. Debro*, 787 S.W.2d 932, 934 (Tenn. Crim. App. 1989) (holding that, to obtain relief based on a content-defective notice, a defendant must show prejudice). "Generally, if notice is filed late or is filed timely but is otherwise defective, the defendant must show prejudice before the notice will be rendered ineffective." *State v. Carter*, 121 S.W.3d 579, 585 (Tenn. 2003). We review the sufficiency of the State's notice to seek enhanced punishment de novo with no presumption of correctness. *State v. Williams*, 558 S.W.3d 633, 639 (Tenn. 2018).

In this case, the State's listed Defendant's three prior convictions from Oklahoma for Rape in the First Degree, provided the date of conviction and convicting court for each offense, and under the heading "Sentence," listed a sentence length of twenty-five years as to each conviction. As previously noted, to qualify as a "prior conviction" under Tennessee Code Annotated section (a)(5)-(6), there must have been "at least one (1) separate period of incarceration for the commission of a predicate offense" before Defendant committed the instant offense. Tenn. Code Ann. § 40-35-120(e)(1)(C). The State's notice, however, did not list the periods of incarceration served by Defendant for his prior convictions. Relying on *Cooper*, the trial court determined that the State had not provided proper notice to Defendant, finding that the State's failure to include "the actual periods of incarceration" on the notice "disqualifie[d] this as a proper notice."

The trial court conducted Defendant's sentencing hearing on October 11, 2017, over a month before the Tennessee Supreme Court filed its opinion in *Patterson*. Thus, the trial court did not have the benefit of the supreme court's guidance in *Patterson*, wherein it clarified that *Cooper* stood "only for the proposition that, if the State fails to

- 11 -

give any notice at all prior to trial, it may not seek enhanced sentencing as a repeat violent offender." *Patterson*, 538 S.W.3d at 439. The supreme court explained that

> the Court in *Cooper* did not cite deficiencies in the content of the State's notice as a basis for setting aside the repeat violent offender sentence. Rather, it cited the State's failure to provide any *pretrial* notice of its intent to seek enhanced sentencing as a repeat violent offender. *Id.* at 508. As this Court had done previously when interpreting the statutory notice requirement for enhanced sentencing as a multiple, persistent, or career offender, the *Cooper* Court strictly applied the statute mandating that the State give "*some* notice meeting the minimal requirements" before trial. [*State v.*] *Livingston*, 197 S.W.3d [710,] . . . 713 [(Tenn. 2006)].

*Patterson*, 538 S.W.3d at 441.

Here, the State filed a pretrial notice of its intent to seek enhanced sentencing as a repeat violent offender on May 23, 2017, in case number 17458. The document clearly and unambiguously informed Defendant of the State's intent to have him sentenced as a repeat violent offender. Although the document failed to list "at least one (1) separate period of incarceration for the commission of a predicate offense[,]" *see* Tenn. Code Ann. § 40-35-120(e)(1)(C), we conclude that it constituted fair notice and unambiguously advised Defendant of the State's intent to sentence him as a repeat violent offender and was sufficient to trigger Defendant's duty to inquire into the omitted information. *See Patterson*, 538 S.W.3d at 443 (citing *Adams*, 788 S.W.2d at 559).

The analysis in this case is complicated, however, by the issuance of the superseding indictment on July 6, 2017, in case number 18305, which charged the additional offense of aggravated kidnapping. "If proper notice is timely filed, but a superseding indictment charges additional offenses, then the State must file a new notice for the additional offenses." *Williams*, 558 S.W.3d at 640 (citing *Carter*, 121 S.W.3d at 584-86). Here, the State failed to file a new notice following the issuance of the superseding indictment in case number 18305; however, at a pretrial motion hearing on August 30, 2017, the State asked that the trial court "incorporate the file from the initial [i]ndictment . . . into the superseding indictment which is case number 18305[,]" and the trial court agreed. We conclude that, by incorporating the original case file into the case file for the superseding indictment, the State substantially complied with its obligation to file a new notice for the additional offense charged in the superseding indictment.

We note that the State incorporated the original case file into the file for the superseding indictment on August 30, 2017, only six days before Defendant's trial on September 5, 2017. As previously stated, a defendant should have forty-five days

between receipt of the State's notice of intent to seek enhanced sentencing as a repeat violent offender and trial. *See* Tenn. Code Ann. § 40-35-120(i)(2). However, the remedy for an untimely notice is the option of a continuance for the defense, not the preclusion of the State from seeking enhanced sentencing. *State v. Thompson*, 36 S.W.3d 102, 115-16 (Tenn. Crim App. 2000) (citing Tenn. Code Ann. § 40-35-120(i)(2)). It does not appear from the record that Defendant requested a trial continuance. Moreover, if the notice is filed late but still filed prior to trial, or the notice is timely filed but is in some other way defective, the notice remains effective for purposes of enhanced sentencing, unless the defendant shows prejudice. *Carter*, 121 S.W.3d at 585. Because Defendant has failed to show that he was prejudiced by the late-filed notice, we conclude that the State's notice was effective for purposes of enhancing Defendant's sentence under the repeat violent offender statute.

## C. Repeat Violent Offender Status

Because the issue of whether a defendant is or is not a repeat violent offender is appealable by either party, *see* Tenn. Code Ann. § 40-35-120(h), this court clearly has the authority to determine Defendant's status as a repeat violent offender. *State v. Thomas D. Stanton*, No. M2003-03049-CCA-R3-CD, 2005 WL 639139, at *15 (Tenn. Crim. App. Mar. 17, 2005), *perm. app. denied* (Tenn. Aug. 22, 2005).

At the sentencing hearing, the State introduced certified copies of the records of Defendant's prior convictions from Oklahoma without objection from Defendant. The records indicate that on May 28, 1997, Defendant pled guilty to two counts of Rape in the First Degree in case number CR-96-508 and one count of Rape in the First Degree in case number CR-96-509. He received concurrent sentences of twenty-five years to serve in the Oklahoma Department of Corrections. Count 1 of the indictment in case number CR-96-508 charges that, on December 22, 1996, Defendant

> did unlawfully, willfully and feloniously with the use of force, threats, violence, or by means of threats of force or violence accompanied by apparent power of execution to [the victim], and did then and there vaginally rape, ravish, carnally know and have sexual penetration and intercourse with [the victim] against her will and consent and said defendant is not married to [the victim][.][3]

---

[3] *See* 21 Okl. St. Ann. § 1111(A)(3), 1114(A)(5).

Count 2 reads that Defendant

> did unlawfully, willfully and feloniously with the use of force, threats, violence, or by means of threats of force or violence accompanied by apparent power of execution to [the victim], and did then and there anally rape, ravish, carnally know and have sexual penetration and intercourse with [the victim] against her will and consent and said defendant is not married to [the victim][.]

The indictment in case number CR-96-509 charges that on December 23, 1996, Defendant

> did unlawfully, willfully and feloniously with the use of force, threats, violence, or by means of threats of force or violence accompanied by apparent power of execution to [a second victim], and did then and there rape, ravish, carnally know and have sexual penetration and intercourse with [the second victim] against her will and consent and said defendant is not married to [the second victim][.]

The records further indicate that Defendant was released to supervised probation on February 2, 2011, by the Oklahoma Department of Corrections.

Based on this evidence, we conclude that the evidence established Defendant's repeat violent offender status and was more than sufficient to support a finding beyond a reasonable doubt that Defendant is a repeat violent offender as defined in the relevant statutory provision. Defendant was convicted of aggravated kidnapping in the instant case and has at least one prior conviction for an offense (Rape in the First Degree) that, if committed in this state,[4] would constitute the predicate offense of rape under the repeat

---

[4] In Tennessee, rape is defined as the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim" where:

> (1) Force or coercion is used to accomplish the act;
>
> (2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;
>
> (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
>
> (4) The sexual penetration is accomplished by fraud.

violent offender statute. *See* Tenn. Code Ann. § 40-35-120(a)(5)-(6); (d)(1)(H)-(I); (e)(4). Moreover, there was at least one separate period of incarceration for the commission of the predicate offense—from May 28, 1997, to February 2, 2011—before Defendant committed the instant offense. Tenn. Code Ann. § 40-35-120(e)(1)(C). As such, the trial court was required to impose a sentence of life without possibility of parole as to Defendant's aggravated kidnapping conviction, and we agree with the State that the trial court erred in failing to do so. *See* Tenn. Code Ann. § 40-35-120(g). Therefore, we modify Defendant's sentence for his aggravated kidnapping conviction to life without possibility of parole.

### D. Mitigating Factor

Defendant contends that the trial court should have considered, as a mitigating factor under the aggravated kidnapping statute, that he "voluntarily release[d] the victim alive[.]" *See* Tenn. Code Ann. § 39-13-304(b)(2) (2017). The State responds that because Defendant is a repeat violent offender and must be sentenced to life without possibility of parole, the issue of a mitigating factor is moot and that, in any event, the trial court properly declined to mitigate Defendant's sentence based on the victim's survival. We agree that Defendant's claim is rendered moot by our decision to modify the sentence for aggravated kidnapping to life without possibility of parole; however, we will address this issue in case of further appellate review.

In concluding that the mitigating factor was not applicable in Defendant's case, the trial court commented:

> The facts of the case . . . [are] that the victim in the case was bound and at some point was tied. At least possibly tied to a tree. But in any event, when she was left she was tied, and in fact, when she went to the neighbor's house her hands were still tied in such a fashion that it does not appear to me that it was an attempt by [Defendant] to simply release her as was envisioned by the mitigating factors in the kidnapping statute that [trial counsel] was arguing. That she was left bound, he may have driven off and left her, but she was nonetheless left bound and her freedom was limited by that. So that's the reason I did not apply that as a mitigating factor, and I still believe that it was not a proper mitigating factor.

Based on the record before us, we conclude that the trial court properly declined to apply the mitigating factor found in Tennessee Code Annotated section 39-13-304(b)(2). The record contains no proof that Defendant "released" the victim. The victim was not

---

Tenn. Code Ann. § 39-13-503(a)(1)-(4).

"released" but was left duct-taped to a tree.  Defendant is not entitled to relief on this issue.

## **Conclusion**

For the aforementioned reasons, we modify Defendant's sentence for his conviction for aggravated kidnapping to life without possibility of parole.  We remand for entry of an amended judgment in Count 2 sentencing Defendant, as a repeat violent offender, to life without possibility of parole.  Upon remand, the trial court should also impose a sentence on the merged conviction of kidnapping in Count 1.  In all other respects, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE