IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 21, 2021, at Knoxville

## STATE OF TENNESSEE v. WILLIAM ISAAC ATWOOD

**Appeal from the Criminal Court for Clay County**
**No. 2018-CR-10    Gary McKenzie, Judge**
_____

**No. M2021-00690-CCA-R3-CD**
_____

A Clay County jury convicted the defendant, William Isaac Atwood, of possession of a prohibited weapon and possession of a firearm by a convicted felon, and the trial court imposed an effective Range II sentence of thirteen years' incarceration. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions and the trial court's sentencing him as a Range II offender. Upon our review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

John B. Nisbet, III, Livingston, Tennessee (at motion for new trial and on appeal) and James P. Hayes, Cookeville, Tennessee (at trial), for the appellant, William Issac Atwood.

Herbert H. Slatery III, Attorney General and Reporter; Kayleigh Butterfield, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Jackson Carter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

The defendant was charged with possession of a prohibited weapon, a short-barrel shotgun, and possession of a firearm by a convicted felon after officers searched his home following a call concerning a domestic dispute involving weapons.

At trial, Sergeant Tyler Thompson with the Clay County Sheriff's Department testified that he was dispatched to the scene of a "domestic with weapons" on February 2,

2018. When he arrived, Sergeant Thompson saw the defendant lying on the ground with one of his neighbors on top of him, pinning him down. The defendant's neighbors informed Sergeant Thompson the defendant had been shooting a gun behind his house toward the horses in the neighbors' field adjacent to the defendant's property. The neighbors yelled to the defendant to stop shooting, and the defendant walked over and started an altercation.

Sergeant Thompson and another officer placed the defendant in a patrol car and obtained consent to sweep his home for weapons. The officers encountered two individuals on the back porch of the defendant's home, Timothy Waldroff and his girlfriend Chasity Fristo. They found a pistol in Mr. Waldroff's pocket, and an AR-15 was found in the living room of the home. After conducting the initial sweep, the responding officers contacted their supervisor Sergeant Anthony Cain to obtain a search warrant.

Sergeant Katie Kerr with the Clay County Sheriff's Department was one of the officers who searched the defendant's home upon receipt of the search warrant. In the living room, Sergeant Kerr found a backpack containing .22-caliber and .223-caliber ammunition, as well as 12-gauge shotgun shells. Sergeant Kerr said she did not find any 20-gauge shotgun shells in the backpack. Sergeant Kerr recalled Mr. Waldroff was the owner of the backpack of ammunition. Sergeant Kerr acknowledged she did not know how long Mr. Waldroff and Ms. Fristo were inside the residence before she arrived.

Sergeant Anthony Cain with the Clay County Sheriff's Department testified he searched the defendant's bedroom in execution of the search warrant. Upon entering the room, Sergeant Cain saw 20-gauge shotgun shells laying on the bed, three full rounds and one spent shell casing. Sergeant Cain then searched the walk-in closet in the defendant's bedroom and found a 20-gauge sawed-off shotgun hidden under some clothing. On cross-examination, Sergeant Cain acknowledged there was nothing connecting the defendant to the sawed-off shotgun aside from it being hidden in the defendant's bedroom closet. Sergeant Cain recalled Mr. Waldroff and Ms. Fristo claimed ownership of the weapons found in the living room.

Chief Deputy Emilio Rick Lisi with the Clay County Sheriff's Department, who is also an ex-Marine and licensed gun shop owner, testified that the shotgun found in the defendant's bedroom had been cut down from its manufactured configuration. He noted the reason for such a modification is often to make the weapon easier to conceal.

The parties stipulated the defendant was previously convicted of a felony involving the use of force in Ohio.

The defendant called one witness, John Lee Smith, Jr., who testified that on the day of the incident he was driving the defendant around Cookeville a large part of the day. Mr. Smith recalled the defendant asked to stop at Mr. Waldroff's house and, while they were visiting, Mr. Waldroff mentioned he wanted to shoot his guns but lived in the city. The defendant invited Mr. Waldroff to "[c]ome over to the house and we'll shoot the guns," explaining he "live[d] out in the sticks[.]"

Despite having just met Mr. Waldroff, Mr. Smith drove Mr. Waldroff to the defendant's house, while the defendant rode with Ms. Fristo. Mr. Smith noted Mr. Waldroff had a duffle bag with him. Mr. Smith saw inside the duffle bag, and he observed an assault rifle, sawed-off shotgun, and shotgun shells. However, Mr. Smith could not testify to the size or color of the shotgun shells. Mr. Smith stated he had never seen the sawed-off shotgun, or any firearms at all, in the defendant's possession. According to Mr. Smith, he dropped Mr. Waldroff off at the defendant's house and immediately left. The defendant was not yet home.

Following the conclusion of the proof, the jury convicted the defendant as charged with possession of a prohibited weapon and possession of a firearm by a convicted felon. Thereafter, the trial court conducted a sentencing hearing and, after which, imposed a Range II sentence of four years on Count 1 concurrent with a Range II sentence of thirteen years on Count 2.

### *Analysis*

### I.    *Sufficiency of the Evidence*

The defendant challenges the sufficiency of the evidence supporting his convictions, asserting "the ONLY evidence tying [him] to the sawed-off shotgun was that the gun was found 'in his home.'" He insinuates the evidence suggests Mr. Waldroff was the one who actually possessed the prohibited weapon. The State submits, however, that the jury could reasonably conclude the defendant constructively possessed the sawed-off shotgun. Upon our review of the record and the applicable law, we agree with the State and affirm the defendant's convictions.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn.

1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-17-1302(a)(4) makes it a Class E felony to intentionally or knowingly possess "[a] short-barrel rifle or shotgun." Tenn. Code Ann. § 39-17-1302(a)(4) and (f)(1). Unlawful possession of a firearm by a convicted felon is a Class B felony when any person who has previously been convicted of a felony involving the use of or attempted use of force, violence, or a deadly weapon subsequently unlawfully possesses a firearm. *Id.* § 39-17-1307(b)(1)(A) and (b)(2).

"Possession may be actual or constructive." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)). Actual possession "refers to physical control over an item." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [an object] either directly or through others.'" *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). In other words, "constructive possession is the ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. *Robinson*, 400 S.W.3d at 534.

When officers searched the defendant's home, they found 20-gauge shotgun shells on the defendant's bed and a sawed-off 20-gauge shotgun in the defendant's bedroom closet under his clothes. The defendant's neighbors' statements to the police indicate the defendant was shooting guns with Mr. Waldroff, and Mr. Smith testified at trial the defendant had invited Mr. Waldroff over saying "we'll shoot guns." Mr. Waldroff claimed ownership off all the weapons and ammunition found at the scene other than the 20-gauge shotgun and shells. In the light most favorable to the State, the evidence was sufficient for the jury to conclude the defendant constructively possessed the prohibited weapon to support his two convictions. *See State v. Humphre Ford*, No. W2015-02407-CCA-R3-CD, 2017 WL 838483, at *4 (Tenn. Crim. App. Mar. 3, 2017) (concluding there was sufficient proof of constructive possession where the weapon was found in the defendant's bedroom and would have been easily assessible to him).

## II.    *Sentencing*

The defendant also asserts the trial court erred in sentencing him as a Range II offender because the State failed to establish that the elements of his prior Ohio convictions would constitute a Class C or D felony in Tennessee, and the corrected notice of enhancement filed by the State was too late for the court to consider.

It is well settled that this Court reviews within-range sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Once the trial court has determined the appropriate sentencing range, it "is free to select any sentence within the applicable range." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-210(d)). When determining a defendant's sentence and the appropriate combination of sentencing alternatives, trial courts are to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and
(8) The result of the validated risk needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. *Id.* § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

At the sentencing hearing, the State introduced evidence of the defendant's having prior convictions in Ohio for burglary and misdemeanor cocaine possession. The State had previously introduced evidence at trial of the defendant's having a prior robbery conviction in Ohio. The State averred the burglary and robbery convictions, committed on January 23, 1992 and February 24, 1992, respectively, established the defendant as a Range II offender. The State contended the drug possession conviction could be used to enhance the defendant's sentence within the range. The State also presented proof that the defendant was charged with new offenses while awaiting trial in the underlying matter, which could serve to enhance his sentence. The defendant asserted his prior convictions were "rather old," and he had not yet been convicted on the new charges.

The trial court noted that in order to be sentenced as a Range II offender, the defendant, here, must have at least two to four prior convictions for Class D or higher felonies. The court determined the defendant's prior Ohio convictions for burglary and robbery qualified and imposed a Range II sentence. The court enhanced the defendant's sentence to fourteen years based on his prior criminal history and criminal behavior, but then mitigated the sentence to thirteen years given the defendant's convictions were "few and far between."

*A.    Prior Ohio Convictions*

With regard to sentencing as a multiple offender, Tennessee Code Annotated section 40-35-106(b)(5) provides:

> Prior convictions include convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

The State's notice of intent to seek enhanced punishment specified the burglary conviction as a Class D felony and robbery conviction as a Class C felony. In addressing the defendant's range, the trial court looked at the defendant's prior Ohio burglary conviction and noted "it would be a Class 'D' felony in the state of Tennessee." The trial court did not make an analogous statement on the record regarding the prior Ohio robbery conviction but determined the two convictions qualified to sentence the defendant as a Range II offender.

The defendant asserts the State did not establish "that the elements of 'burglary in the first degree' in Ohio would constitute a D felony in Tennessee or that the elements of 'robbery' in Ohio would be a C felony in Tennessee." Initially, we observe the documentation regarding the Ohio convictions refers to "burglary" as "burglary," not "burglary in the first degree" as stated by the defendant. Moreover, the statute provides the elements of an offense are only to be used when the "felony from a jurisdiction other than Tennessee *is not a named felony in this state*." Tenn. Code Ann. § 40-35-106(b)(5) (emphasis added). The defendant's convictions from Ohio are "burglary" and "robbery"; Tennessee has similarly titled offenses. As a previous panel of this Court has observed, "The natural language of Tennessee Code Annotated section 40-35-106(b)(5) leads us to the conclusion that the only time a court should look at the elements of a felony from another jurisdiction when determining its appropriate Tennessee classification is when the felony in question is not a named felony in Tennessee." *State v. Michael L. Webster*, No. M2011-00521-CCA-R3-CD, 2012 WL 6032507, at *5 (Tenn. Crim. App. Dec. 5, 2012), *perm. app. denied* (Tenn. Apr. 9, 2013). *See also State v. Jeffrey Mansir*, No. E2019-01419-CCA-R3-CD, 2020 WL 5735606, at *10 (Tenn. Crim. App. Sept. 5, 2020), *perm. app. denied* (Tenn. Feb. 5, 2021); *State v. Ryan Robert Haase*, No. M2012-02244-CCA-R3-CD, 2013 WL 6732908, at *23 (Tenn. Crim. App. Dec. 20, 2013), *perm. app. denied* (Tenn. May 14, 2014). The defendant was convicted of robbery and burglary in Ohio, which are named felonies in Tennessee. The State did not need to establish the elements of the Ohio offenses, and the trial court properly used the Ohio convictions to classify the defendant as a Range II offender.

## B.     Notice of Intent to Seek Enhanced Punishment

The record shows the State filed a notice of intent to seek enhanced punishment on February 5, 2020, twenty-two days before trial, alleging the defendant had prior burglary and robbery convictions in Ohio with offense dates of February 6, 1992, and February 24, 1992, respectively. The State filed an amended notice on February 24, 2020, three days before trial, in which it corrected the date of the prior burglary offense to be January 23, 1992.

Tennessee Code Annotated section 40-35-202(a) provides "[i]f the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial." The notice must provide the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. *Id.* When a detail of the required information is omitted or incorrect, the inquiry should be whether the notice was "materially misleading." *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990). "[W]hen the State has substantially complied . . ., an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." *Id.* If the State's notice is late-filed, then the trial court "shall grant the defendant, upon motion, a reasonable continuance." Tenn. R. Crim. P. 12.3(a). If the notice is filed late but still filed prior to trial, or the notice is timely filed but is in some other way defective, the notice remains effective for purposes of enhanced sentencing, unless the defendant shows prejudice. *See State v. Patterson*, 538 S.W.3d 431, 442 (Tenn. 2017) (citing *State v. Carter*, 121 S.W.3d 579, 585 (Tenn. 2003)).

We initially note the defendant has arguably waived this complaint because he did not raise the issue in any fashion in the court below. Moreover, the State filed a timely notice; it simply contained an inaccuracy. The State then filed a corrected notice, late, but still before trial. Therefore, it was incumbent on the defendant to show prejudice due to the inaccurate and/or late notice, which he has not done. Rather than providing even the semblance of an assertion as to how he was prejudiced, it appears the defendant simply hopes to take advantage of a technicality. We conclude the notice in this case was not materially misleading and the defendant has shown no prejudice.

### *Conclusion*

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE